FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

3-30-11

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA          :
                                  :
          v.                      :   CASE NO. 3:09-cr-305-J-25TEM
                                  :
ALLEN S. PROVENCAL                :


## PLEA AGREEMENT

*ROBERT E. O'NEILL*

A.   **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by ~~A. Brian Albritton~~, United States Attorney for the Middle District of Florida, and the defendant, ALLEN S. PROVENCAL, and the attorney for the defendant, Curtis Fallgatter, Esq., mutually agree as follows:

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 371.

2.   Maximum Penalties

Count One carries a maximum sentence of up to five (5) years imprisonment, a fine of $250,000, a term of supervised release of up to three (3) years, and a special assessment of $100, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the

Defendant's Initials _____                    AF Approval _____

Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.  With respect to supervised release, if the defendant were to violate any of the terms of supervised release upon release from incarceration, the defendant could be sentenced to an additional term of imprisonment up to two (2) years.

3.     Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| | | |
|---|---|---|
| First: | That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the information; | |
| Second: | That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it; | |
| Third: | That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods (or "overt acts") described in the information, and | |
| Fourth: | That such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy. | |

4.     Utilization of the Sentencing Guidelines

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the Court determine the defendant's applicable guidelines range and defendant's guidelines sentence, with any applicable departures, pursuant to the United States Sentencing Guidelines.

Defendant's Initials _____          2

5.     Adjusted Offense Level - Estimate Only

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States, based on the information now available to it, estimates that the defendant's adjusted offense level is 21, as determined below:

| Guideline | Description | Levels |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense | 6 |
| § 2B1.1(b)(1)(G) | Specific Offense Characteristic-- more than $400,000 loss | 14 |
| § 2B1.1(b)(2)(A)(I) | Specific Offense Characteristic-- 10 or more victims | 2 |
| § 2B1.1(b)(9)(C) | Specific Offense Characteristic-- involved sophisticated means | 2 |
| § 3E1.1(a) | Acceptance of Responsibility | -2 |
| § 3E1.1(b) | Acceptance of Responsibility | -1 |
| | Total Adjusted Offense Level | <u>21</u> |

The defendant understands that this estimate is not binding on the Court, the defendant or the United States, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

6.     No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement relating to any mortgage fraud associated with 141 properties and/or any mortgages processed by Jacksonville Mortgage Group.

Defendant's Initials _____         3

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Upward Departure

The United States will recommend to the Court that in sentencing the defendant the Court not depart upward from the applicable sentencing guideline range.

9.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other

Defendant's Initials _____       4

matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   <u>Mandatory Restitution to Victims of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), the United States asserts that full restitution to the following is mandated:

Defendant's Initials _____        5

a.   Bank of New York Mellon as Trustee
For Bear Stearns Asset Backed
Securities Trust 2007-1, Asset-Backed
Certificates, Series 2007-1              $225,948.44

b.   Deutsche Bank National Trust Co. as
Trustee for GSAA Home Equity
Trust 2006-18                            $ 99,272.15

c.   US Bank NA as Trustee for JP Morgan
Mortgage Acquisition Trust 2006-WF1     $225,010.87

d.   Deutsche Bank National Trust Co. as
Trustee for Soundview Home Loan
Trust 2006-WF1                           $263,307.68

The United States acknowledges that defendant disputes these amounts and will contest them at sentencing. Regardless of any finding by the Court, defendant understands that he will be jointly and severally liable with any other co-conspirators for the restitution in this case which is mandatory, and which might possibly include restitution for other victims of uncharged conduct which took place during the time period of the conspiracy alleged in the Information in the instant case.

11.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating

Defendant's Initials _____ 𝓒𝓟 _____              6

circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.      It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)      The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)      The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly

Defendant's Initials ___*Qu*___                  7

been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant its own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _____       8

13. <u>Agreement Not to Engage in Any Business or Occupation Related to Real Estate Transactions</u>

The defendant agrees that, during the pendency of this case and during any term of imprisonment or term of supervised release or probation, and as a condition of supervised release or probation, he will not engage, directly or indirectly, formally or informally, in any business, trade, or occupation related to deriving income through the buying, selling, or leasing of real property, or giving advice about the buying, selling, or leasing of real property, including acting as a buyer, a seller, a real estate agent, a leasing agent, a mortgage broker, a lender, an appraiser, an investor, or in any other capacity. This agreement is not intended to prohibit the defendant from participating in the buying, selling, or leasing of real estate on which he or members of his immediate family reside or will reside, nor is it intended to prevent the defendant from engaging in joint ventures in which the defendant is a contractor for the building of homes and does not directly own or sell the properties involved. The defendant understands that he will be required to disclose the specifics of any such joint venture to the United States Probation Office and provide any documents as requested, and that he is required to disclose the existence of any future joint ventures and provide documents as requested.

14. <u>Surrender of Licenses Related to Real Estate Business or Occupation</u>

The defendant agrees that, during the pendency of this case and during any term of imprisonment or term of supervised release or probation, and as a condition of supervised release or probation, he will surrender and will not apply for or seek to reinstate any and all licenses or other certificates that would authorize him to engage in

Defendant's Initials _____  9

any business, trade, or occupation that relates to the buying, selling, or leasing of real property, or giving advice about the buying, selling, or leasing of real property, including but not limited to the following licenses or certificates: Real Estate Broker, Real Estate Sales Associate, Mortgage Broker, Mortgage Lender, Certified Residential Appraiser, Certified General Appraiser, General Appraiser (Instructor), and similar licenses and certificates. The defendant agrees to surrender any such licenses and certificates that he currently holds no later than twenty days after he enters a plea of guilty in this case.

B.   **Standard Terms and Conditions**

    1.   Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _*Ø*_          10

2.   Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition.  The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations

Defendant's Initials ___⟨∅⟩___          11

to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

    4.    <u>Sentencing Recommendations</u>

        It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

    5.    <u>Appeal of Sentence-Waiver</u>

        The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to

Defendant's Initials _____           12

the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6.      <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.      <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or in <u>camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.      <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of

Defendant's Initials  _____      13

any kind. The defendant further acknowledges defendant's understanding of the nature

of the offense or offenses to which defendant is pleading guilty and the elements

thereof, including the penalties provided by law, and defendant's complete satisfaction

with the representation and advice received from defendant's undersigned counsel (if

any). The defendant also understands that defendant has the right to plead not guilty

or to persist in that plea if it has already been made, and that defendant has the right to

be tried by a jury with the assistance of counsel, the right to confront and cross-examine

the witnesses against defendant, the right against compulsory self-incrimination, and

the right to compulsory process for the attendance of witnesses to testify in defendant's

defense; but, by pleading guilty, defendant waives or gives up those rights and there

will be no trial. The defendant further understands that if defendant pleads guilty, the

Court may ask defendant questions about the offense or offenses to which defendant

pleaded, and if defendant answers those questions under oath, on the record, and in

the presence of counsel (if any), defendant's answers may later be used against

defendant in a prosecution for perjury or false statement. The defendant also

understands that defendant will be adjudicated guilty of the offenses to which defendant

has pleaded and, if any of such offenses are felonies, may thereby be deprived of

certain rights, such as the right to vote, to hold public office, to serve on a jury, or to

have possession of firearms.

     9.    <u>Factual Basis</u>

         Defendant is pleading guilty because defendant is in fact guilty. The

defendant certifies that defendant does hereby admit that the facts set forth in the

attached "Factual Basis," which is incorporated herein by reference, are true, and were

Defendant's Initials __ⒿⓂ__        14

this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

10.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___11th___ day of ___May___, 2010.

~~A. BRIAN ALBRITTON~~  ROBERT E. O'NEILL
United States Attorney

ALLEN S. PROVENCAL
Defendant

By: _____
RONALD T. HENRY
Assistant United States Attorney

CURTIS FALLGATTER, Esq.
Attorney for Defendant

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials ___AP___          15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.  3:09-cr-305-J-25TEM

ALLEN S. PROVENCAL

_____

## PERSONALIZATION OF ELEMENTS

Count One – Conspiracy

1.      Do you admit that from at least 2005, and continuing thereafter until March 2008, in Jacksonville, Florida, and elsewhere, that you, along with others, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the Information?

2.      Do you admit that knowing the unlawful purpose of the plan, you willfully joined in it?

3.      Do you admit that one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the methods (or "overt acts") described in the Information, such as Overt Act # 3, where on April 24, 2006, you brought an official bank check from Bank of America, check number 2758192, in the amount of $17,365.76, to a co-conspirator closing agent, for residential real estate located at 8174 Paul Jones Drive, Jacksonville, Florida, in order to mislead the lending institution funding the mortgage into believing that the source of the down payment for the

Defendant's Initials _AP_

property was the investor/borrower, when in truth and fact, the source of the down

payment was you the defendant, ALLEN S. PROVENCAL?

4.     Do you admit that such "overt act" was knowingly committed in an effort to

carry out or accomplish some object of the conspiracy?

Defendant's Initials _____                    2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                            Case No.  3:09-cr-305-J-25TEM

ALLEN S. PROVENCAL

_____

## FACTUAL BASIS

From at least 2005 and continuing until March 2008, ALLEN S.

PROVENCAL, Larry Michael Provencal, and other co-conspirators in Jacksonville,

Florida, were members of a residential real estate scheme to commit mortgage fraud.

## BACKGROUND

A HUD-1 Settlement Statement (HUD-1) is a United States Department of

Housing and Urban Development form which is universally used in closings of

residential properties in the United States.  A HUD-1 is used to identify and allocate the

various expenses associated with the sale of residential real estate between the buyer

and the seller of the property.

A Uniform Residential Loan Application, commonly referred to as a

mortgage loan application or a Form 1003, is a universally used mortgage application

developed by federal government agencies, and is utilized by lending institutions in the

mortgage loan approval process.  The Form 1003 requires the buyer/borrower to submit

his/her financial history, including employment information, monthly income, assets and

liabilities, and the specific details of the residential real estate transaction.

Defendant's Initials _____

Mortgage companies facilitate the mortgage loan process by assembling information and documentation used by lending institutions in connection with lending institutions' loan approval process for residential real estate loans.  Mortgage companies are tasked with ensuring that the information set forth on Form 1003 is true, correct, and free of any misrepresentation. procuring property appraisals, securing verification of employment letters, and if necessary, assisting in securing escrow letters reflecting that the buyer/borrower has deposited the necessary funds into an escrow account to close the real estate sale transaction.

The term "closing" is used in the real estate industry to refer to the legal transfer of real estate from seller to buyer.  Wells Fargo Bank, N.A., was one of the lenders that extended mortgage loans to fund the purchases of properties involved in ALLEN S. PROVENCAL's fraudulent real estate investment scheme.

**THE SCHEME**

It was part of the scheme that ALLEN S. PROVENCAL would purchase distressed residential real estate, make repairs to the properties, and identify, and have others identify, investors to purchase the residential properties from ALLEN S. PROVENCAL.  In order to entice the investors to purchase the properties, ALLEN S. PROVENCAL would advise investors that they (the "investors") would not be required to make any down payment or pay any closing costs when purchasing the properties. Additionally, ALLEN S. PROVENCAL would give investors advice on determining rental rates and inform them of the expected mortgage payments.

Defendant's Initials _____        2

The mortgages for the purchase of the homes by the investors were originated by Larry Michael Provencal, a co-conspirator, who was a State of Florida licensed mortgage broker.  In securing the mortgages for the investors, Larry Michael Provencal would knowingly and willfully include false and fraudulent financial documentation and information regarding the borrower on the mortgage loan application, that is, the Form 1003.  In making the mortgage loans, the lending institutions relied upon the false and fraudulent information regarding the investors. The false information Larry Michael Provencal would include on the Form 1003 included significantly inflating the investors' monthly income and falsely reporting tens of thousands of dollars in savings accounts.

The mortgages extended by the lending institutions were not 100% of the sales or purchase price of the properties.  Therefore, the lending institutions required evidence that the investor (borrower) had the funds to close on the property.  In order to mislead and trick the lending institutions into believing that the investors were making the down payment and paying their share of the closing costs, ALLEN S. PROVENCAL would obtain an official bank check from his personal bank account in the amount of the funds the investor needed for closing and caused the investors' name to be placed on the check as the remitter of the funds for purchasing the official bank check.

The official bank check was then transmitted to the lending institution by facsimile transmission, and thereafter, the lending institution authorized the release of the loan proceeds.   In the normal course of the lending institutions extending the mortgages, interstate wires were used to transmit documents via facsimile and

Defendant's Initials _____          3

electronic funds transfers were made from outside the State of Florida to accounts inside the State of Florida.

In order to consummate the fraudulent real estate transactions, a co-conspirator closing agent tricked the lending institutions into believing that the investors were making the down payment and paying their share of the closing costs by including false and fraudulent information on HUD-1 Settlement Statements. On the HUD-1s, the closing agent fraudulently reflected that the investor/borrower had been the source of the down payment and the closing costs. Because many of the investors or home buyers were not credit worthy to receive the mortgage loans, numerous properties involved in this real estate investment scheme have gone into foreclosure and the financial institutions have suffered significant losses.

**SPECIFIC PROPERTY INVOLVED IN SCHEME (Overt Acts 1 through 7)**

In April 2006, in connection with an investor/borrower's purchase of residential real estate located at 8174 Paul Jones Drive, Jacksonville, Florida, from ALLEN S. PROVENCAL's fraudulent real estate investment scheme, a co-conspirator working at Jacksonville Mortgage Group, Inc., created and included on a Form 1003 mortgage loan application, false and fictitious financial information pertaining to the investor/borrower's financial condition. This false information, which was relied upon by Wells Fargo Bank, N.A., in extending the mortgage, included a $27,000 savings account balance with Bank of America which the investor/borrower did not have, and significantly inflating the investor/borrower's monthly income.

Defendant's Initials _____         4

On April 24, 2006, in order to trick and mislead Wells Fargo Bank, N.A., in connection with the mortgage on 8174 Paul Jones Drive, Jacksonville, Florida , ALLEN S. PROVENCAL obtained an official bank check, check number 2758192, from his personal Bank of America account, in the amount of $17,365.76, on which he caused the check to fraudulently reflect that the remitter of the funds was the "investor/ borrower," when in truth and fact, ALLEN S. PROVENCAL was the source of the funds. On that same day, April 24, 2006, ALLEN S. PROVENCAL brought the official bank check from Bank of America, check number 2758192, to a co-conspirator closing agent, for residential real estate located at 8174 Paul Jones Drive, Jacksonville, Florida. The purpose of providing the check to the closing agent was in order to mislead the lending institution funding the mortgage into believing that the source of the down payment for the property was the investor/borrower.

On April 24, 2006, in connection with the closing of the residential real estate located at 8174 Paul Jones Drive, Jacksonville, a co-conspirator, who was the closing agent for that property and many other properties involved in this scheme, created a false and fraudulent HUD-1 to effectuate a closing. The HUD-1 falsely reflected that the investor/borrower had provided $17,365.76 in funds towards closing, when in truth and fact, the investor/borrower had not provided said funds. Therefore, the only real funds produced at closing came from the mortgage extended by Wells Fargo Bank, N.A.

Based upon the fraud by the defendant and his co-conspirators, on or about April 24, 2006, Wells Fargo Bank, N.A., transmitted, by interstate wire transfer, the sum of $105,300 into the bank account of the closing title company in Jacksonville,

Defendant's Initials  _____          5

Florida.  At the closing on April 24, 2006, ALLEN S. PROVENCAL received a check in the amount of $24,642.00.  This check represented the return of the funds in the official bank check, that is, $17,365.76, and proceeds of the fraud.  Following the closing, on or about April 24, 2006, co-conspirators caused the loan package from the closing for residential real estate located at 8174 Paul Jones Drive, Jacksonville, Florida, to be sent by interstate commercial carrier to Wells Fargo Bank, N.A., Minneapolis. Minnesota.

## PROCEEDS OF THE FRAUD

The parties are unable to reach an agreement regarding the application of §2B1.1(b)(2) as to number of victims.  Nevertheless, the fraudulently obtained mortgages resulted in lending institutions extending $1,328,300 in residential mortgage loans.  These mortgage loans would not have been approved but for the fraud involved as described above.

ALLEN S. PROVENCAL was the primary financial beneficiary from this fraud.  During the scheme, ALLEN S. PROVENCAL obtained on average approximately $27,820 per property in gross proceeds, that is, at least $361,660.

Defendant's Initials _____         6